UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-80108-CR-CANNON

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

MARKELL ANTHONY COLEMAN,

                Defendant.
_____/

## STIPULATED STATEMENT OF FACTS

**A.   Elements of Offense**

By his signature below, the defendant understands and acknowledges that were this matter to have proceeded to trial, the United States would have had to prove the following elements beyond a reasonable doubt as to Count 2 of the Indictment, which charges the defendant with the Unlawful Possession of an Unregistered "Firearm," in violation of Title 26, United States Code, Section 5861(d):

    (1)    the Defendant knowingly possessed a firearm;

    (2)    the firearm was not registered to the Defendant in the National Firearms Registration and Transfer Record; and

    (3)    the Defendant knew of the specific characteristics or features of the firearm that made it subject to registration under the National Firearms Registration and Transfer Record (NFRTR).

A "firearm" for purposes of Title 26 of the United States Code, includes a "machingun" under Title 26, United States Code, Section 5845(a)(6), and Title 26, United States Code, Section 5845(b), defines a machinegun, in pertinent part as: "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."

B. **Statement of Facts**

Had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt, through admissible testimony and evidence, which the defendant agrees, by his signature below, are true and correct facts, and satisfy all the necessary elements of the offenses of conviction referenced above and in paragraph 1 of the Plea Agreement:

1. On February 2, 2023, West Palm Beach Police Department (WPBPD) Detectives Bryan Vautin and Robert Hatcher located Markell Anthony COLEMAN, the defendant in this case (hereinafter "defendant COLEMAN") in Palm Beach County and the Southern District of Florida, and took him custody in accordance with the provisions of a judicially-authorized state Search Warrant which determined the probable cause existed to obtain a DNA sample from the defendant for comparison purposes with evidence seized in another case. The state Search Warrant specifically provided that law enforcement was "authorized to seize the person of the said MARKELL COLEMAN if he/she is not in

custody, and transport him/her to West Palm Beach Police Department. 600 Banyan Blvd, West Palm Beach, FL 33401, for the purpose of executing this search warrant." Accordingly, COLEMAN was transported to the West Palm Beach Police Department for the collection of his DNA. Upon Detective Vautin searching COLEMAN's person per written WPBPD policy prior to transporting him in a WPBPD vehicle, he located two (2) cellular phones and a black, triangularly shaped metal device, which Detective Vautin recognized from recent training briefs and intelligence bulletins as an AR machinegun conversion device used to mechanically alter a legal semi-automatic AR-15 style firearms to fire fully automatically as a machinegun, when dropped into the rear area of the firearm's internal receiver area.

2. Upon obtaining DNA samples from defendant COLEMAN, defendant COLEMAN was released and the black metal triangularly shaped object believed to be a machine gun conversion device was sent to the ATF Firearm & Ammunition Technology Division (FATD) for examination.

3. Firearms Enforcement Officer (FEO) Jason Armstrong of the ATF's FATD would testify that in May, 2024, he examined ATF "Exhibit 138," the black metal triangularly shaped object believed to be a machine gun conversion device discovered on COLEMAN's person at the time the DNA warrant was served on February 2, 2023, and determined that such was a part designed and intended solely and exclusively, for use in converting a AR-15 variant rifle into a machinegun, and that therefore, Exhibit 138 is a "machinegun" as defined in 26 U.S.C. § 5845(b). FEO Armstrong would further testify that during his testing protocol he installed Exhibit 138 into a semi-automatic AR-15 rifle from the ATF reference collection, inserted a magazine loaded with 10 live rounds, and that the firearm thereafter

fired the entire 10 rounds automatically, without manual reloading, by a single function of the trigger.

4.    An ATF custodian of records would testify that a diligent search of the National Firearms Registration and Transfer Records checks determined that no Title 26 NFA firearms were lawfully registered to defendant COLEMAN.  Moreover, the machinegun conversation device bore no manufacturer's name or serial number and thus could not be legally registered to defendant COLEMAN in any event since, at all times materials hereto, defendant COLEMAN was a convicted felon and was aware he was prohibited from possessing firearms.

5.    ATF Task Force Officer (TFO Ward) was granted state search warrants for two phones obtained from COLEMAN the day the DNA warrant was executed. Upon execution of the search warrants located in the Red/Pink iPhone: IMEI: 356114097702442 were numerous images and videos of COLEMAN. One image depicted an open palm of a hand holding the black metal triangularly shaped object (machinegun conversion device) which appeared identical to the item recovered from defendant COLEMAN's person that was determined by the Firearm & Ammunition Technology Division to be a machine gun (Exhibit 138). The fingerprints of the person holding the machinegun conversion device in the image were examined by WPBPD Latent Print Examiner Grillo with defendant COLEMAN's known arrest fingerprints, and determined to belong to one and same person, defendant COLEMAN.

6.    Additionally, TFO Ward discovered numerous text message conversations related to the sale of the machine gun conversion device in defendant COLEMAN's phone, to include a:

a.) Conversation on 2/1/2023 between defendant COLEMAN, (561) 480-7246, and "TJ" at number (561) 598-1844 where defendant COLEMAN sends "TJ" the image of the machine gun conversion device and states "250." "TJ" responds by asking "Wats that." COLEMAN then replies, "a fully piece."

b.) Conversation between defendant COLEMAN, (561) 480-7246, and the number (561) 719-4293. On 1/20/2023 defendant COLEMAN states "Yo dis Markell." Then on 2/1/2023 COLEMAN sends a message "You want a fully piece" along with the image of the machine gun conversion device. (561) 719-4293 replies by asking "How much, that for chop?" Defendant COLEMAN replies by saying, "Ya, 300, Let me know what up ight."

c.) On 2/1/2023, defendant COLEMAN, (561) 480-7246, sends the image of the machine gun conversion device to the number (786) 971-8886. The individual using number (786) 971-8886 replies "Disliked an image" and defendant COLEMAN replies by saying "For the chop fam."

d.) On 2/1/2023, defendant COLEMAN, (561) 480-7246, sends the image of the machine gun conversion device and the number "300" to the number (561) 889-2703. The user of number (561) 889-2703 ask "Who this" and defendant COLEMAN replies "Markell."

7. Throughout the aforementioned conversations, defendant COLEMAN refers to the machine gun conversion device that he is in possession of as a "fully piece." TFO Ward would testify that he knows from his training and experience, and the context of the communications, that defendant COLEMAN is referring to the machinegun conversation device, turning a semi-automatic firearm into a "fully" automatic machine gun. Also, during these conversations COLEMAN is sending the individuals different numbers that are prices for the machinegun conversion device in an attempt to sell it. There is slang terminology

used throughout the conversations of "Chop." TFO Ward knows through his training and experience that the slang terminology of "chop" is an abbreviation for "choppa" (derived from "chopper" which is 1930s gangster terminology used for a submachinegun) which is typically used in the present era to refer to a high-capacity military style rifle such as an AR-15 or AK-47 variant rifle. Within the images of the cellphone extraction there were also multiple photographs of Markell COLEMAN.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY: _____
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY

SEEN, AGREED AND APPROVED:

_____
MARKELL ANTHONY COLEMAN
DEFENDANT

_____
ROBERT ADLER
ASSISTANT FEDERAL PUBLIC DEFENDER
ATTORNEY FOR DEFENDANT

Dated: 10/15/24

At Ft. Pierce, Florida.